UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN LAMAR ATCHISON,

        Plaintiff,                       Case No. 1:22-cv-939

v.                                           Hon. Jane M. Beckering

H. WASHINGTON, S. BURT, and
D. STEWARD,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Kevin Lamar Atchison ("Atchison") is a prisoner in the custody of the Michigan Department of Corrections (MDOC). This lawsuit involves incidents which occurred at the Muskegon Correctional Facility (MCF). Specifically, Atchison has sued MDOC Director Heidi Washington, MCF Warden Sherry Burt, and MCF Deputy Warden Darrell Steward in their individual and official capacities with respect to their response to the COVID-19 pandemic during July and August 2020. Compl. (ECF No. 1, PageID.1-4). This matter is now before the Court on defendants' motion to dismiss (ECF No. 27). The motion is unopposed.

        **I.**     **The complaint**

Atchison alleged that he has a history of bronchitis ("a respiratory disease"). *Id*. at PageID.2. On July 27, 2020, Warden Burt notified the general population via e-mail that the facility had encountered its first COVID-19 case. *Id*. The COVID-19 cases increased rapidly, reaching 114 cases on August 11, 2020. *Id*. at PageID.3. In response, defendants devised a plan to move individuals identified as "positive and close contact / person of interest". *Id*. As part of the plan, "close contact / suspect persons" were placed in Atchison's housing unit, and "were

allowed to occupy open-space Dayrooms, Bathrooms, Showers, etc. as the negative COVID-19 housing unit 4 prisoners." *Id*. On August 12, 2020, Atchison was tested for COVID-19, with a positive test result on August 13, 2020. *Id*. As part of defendants' plan, Atchison was removed from a housing unit cell to a dormitory-style space ("garage space") with about 40 other "positive, close contacts, and (On information/belief[)], negative COVID-19 prisoners". *Id*. The "garage space" did not permit social distancing because the bunk beds were positioned less than six feet apart. *Id*.

> Atchison further alleged,
>
> 22.) While liviing [sic] in this "garage space", Plaintiff started experiencing respiratory issues relative to [his] pre-existing health condition ("Bronchitis"). Plaintiff drafted a [sic] institutional correspondence to Defendants Burt and Steward informing them both of Plaintiffs [sic] pre-existing health condition, and the dormitory-style / congregate space (garage space) is not conducive to mitigating the spread of, and recovery from, COVID-19 especially, prisoners with pre-existing condition [sic].
>
> 23.) In response to Plaintiffs [sic] institutional correspondence Defendants Burt and Steward via Housing Unit Officer informed Plaintiff that, "there was nothing that can be done, and that the [sic] this would continue to be Plaintiffs [sic] living space until directed by Defendant Washington to proceed in another manner.
>
> 24.) Plaintiff remained housed in a "garage space" (dormitory style) conditions while positive for COVID-19, pre-existing medical condition, inability to social distance, and no ventilation or health care assist/aid for about seven (7) to ten (10) days.

*Id*. at PageID.3-4.

Atchison alleged that these actions constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment. *Id*. In addition, Atchison alleged that defendants' actions "amounted to <u>deliberate indifference</u> to Plaintiffs [sic] disability constitute [sic] a violation of Americans w/ Disability Act (ADA) 42 USC § 2131(2) and Rehabilitation Act (RA) 29 USC § 794." *Id*. at PageID.4. For his relief, Atchison seeks a declaration that defendants

violated his rights under the Constitution and laws of the United States, as well as compensatory and punitive damages. *Id*. at PageID.5.

## II. Discussion

### A. Legal standard

Defendants moved to dismiss Atchison's complaint pursuant to "Federal Rule of Civil Procedure 12(b)." Motion (ECF No. 27, PageID.65). The Court will treat this as a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Finally, while *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004). Thus, "an unadorned, the - defendant - unlawfully - harmed - me accusation" is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678.

3

### B.     Atchison did not oppose the motion to dismiss

Atchison's failure to file a response to defendants' motion to dismiss is fatal to his position. This failure is both a forfeiture of his claim and a waiver of opposition to the relief sought in the motion. *See Notredan, L.L.C. v. Old Republic Exchange Facilitator Co.*, 531 Fed. Appx. 567, 569 (6th Cir. 2013) (the plaintiff's failure to respond to a motion to dismiss its claim amounts to a forfeiture of that claim). *See also, Scott v. Tennessee*, 878 F.2d 382 (6th Cir. 1989) (affirming district court's grant of the defendant's unopposed motion to dismiss, noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"); *Humphrey v.U.S. Attorney General's Office*, 279 Fed. Appx. 328, 331 (6th Cir. 2008) (same); *Thorn v. Medtronic Sofamor Danek, USA, Inc.*, 81 F. Supp. 3d 619, 631-32 (W.D. Mich. 2015) (granting defendant's motion to dismiss where "Plaintiff fatally provides no opposition to Defendants' arguments") (citing *Scott*, *Notredan*, and *Humphrey*). For this reason alone, defendants' motion to dismiss should be granted.

### C.     Official capacity claims

Atchison seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, Atchison's claims for monetary damages against each defendant in his or her official capacity is barred by Eleventh Amendment immunity. *See Will v. Department of State*

*Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). Accordingly, defendants' motion for summary judgment should be granted as to the "official capacity" claims seeking monetary damages.

### D. Qualified Immunity

Defendants contend that they are entitled to qualified immunity with respect to Atchison's Eighth Amendment claim. Under the affirmative defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). Thus, the doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

"When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). The Sixth Circuit applies a two-tiered inquiry in reviewing the dismissal of a claim on qualified immunity. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

> The first step is to determine if the facts alleged make out a violation of a constitutional right. The second is to ask if the right at issue was clearly established

> when the event occurred such that a reasonable officer would have known that his conduct violated it.

*Id.* (internal quotation marks omitted).  Here, defendants are entitled to qualified immunity because Atchison failed to allege a constitutional violation.

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

In order for a prisoner to prevail on an Eighth Amendment deliberate indifference claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with " 'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id*. at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

In the context of COVID-19, the Sixth Circuit has held that "the objective prong is easily satisfied." *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (observing that "T[t]e COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death"). Ordinary Eighth Amendment principles apply to the subjective prong with the key inquiry being whether the defendant responded reasonably to this risk. *Id*. A response may be reasonable even if "the harm imposed by COVID-19 on inmates . . . 'ultimately [is] not averted.'" *Id*. at 841 (quoting *Farmer*, 511 U.S. at 844).

Here, defendants admit that Atchison met the objective prong because COVID-19 creates a substantial risk of serious harm. Defendants' Brief (ECF No. 28, PageID.81) (citing *Wilson*, 961 F.3d at 840). However, defendants point out that Atchison did establish the subjective prong because they responded reasonably to the risk posed by COVID-19 at that time and place. In their brief, defendants addressed the CDC's guidelines:

> The CDC's guidelines specifically state prisoners who are "confirmed or suspected of COVID-19" be "immediately placed under medical isolation in a separate environment from other individuals." (Ex. D, p. 17.) These guidelines define "medical isolation" as "confining a confirmed or suspected COVID-19 case (*ideally* to a single cell with solid walls and a solid door that closes), to prevent contact with others and to reduce the risk of transmission." (*Id*. p. 4.) These guidelines go on to note that if quarantined individuals leave the quarantine space

7

> for any reason, they should wear cloth face covering. (*Id*. p. 24.) Further, the guidelines note that all spaces where individuals with COVID-19 spend time are "thoroughly and frequently clean and [to] disinfect all areas where individuals with confirmed or suspected COVID-19 spend time." (*Id*. p. 20.)

Defendants' Brief at PageID.82-83.  *See* Defendants' Exhibit D ("*Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*") (ECF No. 28-5, PageID.103-128).

Atchison does not contest that the MDOC's response to the COVID-19 pandemic was reasonable.  Rather, Atchison alleged that defendants violated the Eighth Amendment on an unspecified date when his housing unit allowed inmates who were labeled "close contacts / persons of interest" to "occupy open space Dayrooms, Bathrooms, showers, etc" that were used by inmates who had not tested positive for COVID-19, and that this incident violated the *CDC's Interim Guidance*.  *See* Compl. at ¶¶ 9 and 18, PageID.2-3.  Plaintiff also alleged that after he tested positive for COVID-19, he was removed to the "dormitory-style" space with about 40 other prisoners, which included those who tested positive, close contacts, and prisoners who tested negative.  *Id*. at PageID.3-4.

In addressing Atchison's claims, defendants point out that:

> Atchison fails to explain why the placement of COVID-19 "close contact" prisoners shows that Defendants knew of and disregarded an excessive risk and does not indicate whether he came into contact with COVID-19-positive prisoners at this time. Atchison also does allege that he lacked a mask or other personal protective equipment, or that he was unable to practice social distancing from *any* prisoner. . .

Defendants' Brief at PageID.83 (emphasis in original). Finally, Atchison alleges no facts to support his conclusory allegation that the "dormitory-style" space was "not conducive to mitigating the spread of, and recovery from, COVID-19."  *See* Compl. at PageID.3-4.

8

Here, Atchison's complaint does not present a plausible claim that defendants were deliberately indifferent to his health and safety in violation of the Eighth Amendment. Atchison's claims arise from defendants' implementation of the CDC guidelines. While Atchison disagrees with the way in which defendants implemented the guidelines, this disagreement does not give rise to a constitutional violation. "A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety'." *See Farmer*, 511 U.S. at 844. By implementing the CDC guidelines, defendants did just that. With respect to the dormitory-style housing, Atchison's conclusory allegations of wrongful conduct were nothing more than "unadorned, the – defendant[s] - unlawfully - harmed - me accusation[s]", which are insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. Finally, the fact that Atchison ultimately tested positive for COVID-19 does not demonstrate that defendants acted unreasonably in responding to the COVID-19 pandemic. *See Wilson*, 961 F.3d at 841. For all of these reasons, defendants' motion to dismiss should be granted.

### E. ADA and RA

Atchison's complaint does not seek an accommodation for a disability under either the ADA or the RA. Rather, Atchison conflates the Eighth Amendment with the ADA and RA, *i.e.*, Atchison seeks compensatory and punitive damages against the individual defendants, because they were deliberately indifferent to his rights under the ADA and the RA. In short, this is another version of his Eight Amendment claim. For the reasons discussed, *supra*, this claim fails.

However, even if Atchison's reference to the ADA and the RA was construed as a claim for relief under those statutes it would fail. Because the ADA and the RA set forth the same remedies, procedures, and rights, the Court can address claims brought under both statutes together. *See Thompson v. Williamson County*, 219 F.3d 555, 557, n. 3 (6th Cir. 2000). Atchison's

claims fail because "[n]either the ADA nor the RA impose liability on individuals." *Lee v. Michigan Parole Board*, 104 F. App'x 490, 493 (6th Cir. 2004). Furthermore, Atchison's claims for "deliberate indifference" are not relevant to claims under the ADA and RA, both of which "involve discrimination for an alleged disability and not medical treatment for that disability." *Stevenson v. Pramstaller*, No. 2:08-cv-79, 2009 WL 1883878 at *3 (W.D. Mich. June 30, 2009) (dismissing the plaintiff's ADA and RA claims where the plaintiff alleged "that he [was] not being treated for Hepatitis because he [had] Hepatitis"). *See also, Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."). Accordingly, these claims should be dismissed.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion to dismiss (ECF No. 27) be **GRANTED** and that this case be **DISMISSED**.

Dated:  January 8, 2025                                    /s/ Ray Kent
                                                           RAY KENT
                                                           United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).